Good morning, Your Honor, and may it please the Court. Beth Terrell on behalf of Plaintiff Sandra Thornell and the proposed class. I'd like to try to reserve five minutes for rebuttal. Regardless of which section of the Restatement's second of conflicts of laws, this Court applies. Under controlling Washington State choice of law jurisprudence, Washington has a most significant relationship to Ms. Thornell's consumer protection claim against Washington-based Debt Collector, SSB, and its Illinois-based principal, State Farm. I'd like to . . . Let me begin by saying one thing. I somewhat see that with regard to the Seattle Service Bureau. I don't see it with regard to State Farm. Could there be different answers for different defendants? There could be. Your Honor, there could be different answers. In fact, the Restatement allows a different choice of law for different issues. And so it's a flexible approach. I do think in this case, however, the answer will be the same. It certainly will not be Texas because . . . Why is that? Let me hypothesize something for you. Let's assume that instead of the laws existing the way they do now, under Texas law, your client would have a remedy. And under Washington law, she would not. Wouldn't there be an overwhelmingly good argument for applying Texas law in that case? I would argue that if there was no remedy under Washington law . . . Right. But that a resident of Texas received letters which she believes violate Texas law, sent to her in Texas, directed to her in Texas, and where her harm occurred in Texas. And let's assume, again, as I said, that Texas law provided her with a remedy. You would be here arguing that Washington law, which provided her no remedy, applied? I think even under those circumstances, there would be a second analysis, which is the interests of the varying states. And that's the analysis . . . Well, so let's look at the interests of the varying states. What interest does Washington have in affording protection to your client? She lives in Texas. She has no Washington ties. They have consumer protection laws, which I assume, and the cases seem to suggest, were passed to protect their residents. When you look at the interests of the varying states, what's Washington's interest in protecting your client? Washington's interest in protecting Ms. Thornell was actually clearly addressed in the Thornell case itself by our state Supreme Court. And that is because there's a . . . No, the Supreme Court just said it was . . . the statute could apply extra-territorially. It didn't talk about choice of law. It had a very explicit reservation of the choice of law issue. I agree with that, Your Honor. However, the rationale as to how the court found that Ms. Thornell had a claim under the Consumer Protection Act goes directly to Washington's interest in the dual purpose of the Consumer Protection Act. And there are two purposes. One is to protect the public. And importantly, in order to reach the decision they did in Thornell, they found that is not just the public . . . that's not just Washington residents. That's the public. To be sure, but when we're looking at the interests of the states, certainly Washington has a greater interest in protecting its residents than it does protecting residents of other states, does it not? It does, but there's a second purpose to the Consumer Protection Act, and that is to foster honest and fair competition. And that is the element that the Thornell court spent a great deal of time on. With respect to State Farm, what's the interest of Washington with respect to State Farm? I would say again that Thornell answered that, which is Washington has an interest in deterring out-of-state principals from coming into Washington and hiring agents that violate Washington law. And that is one of the key reasons why the Thornell court found that Ms. Thornell's claim had a sufficient nexus to the interest of Washington State, and it affected trade and commerce, directly or indirectly, so that the Consumer Protection Act applies. Did the Washington Supreme Court really find that, or did it just find that as a matter of statute could apply extraterritorially? The analysis in Thornell is well beyond just a statutory construction. Isn't it? I think that was the only question the Washington Supreme Court answered. It said this statute may apply extraterritorially. It didn't go through the interests of your client in this case or the necessity to punish these particular defendants. It said on its face, as a matter of statutory interpretation, the statute can apply extraterritorially. Now, we've answered your question, Federal Court. You go deal with the rest of the case. It didn't balance interests of these particular parties, did it? No, Your Honor, but it did very clearly identify Washington's interests in deterring misconduct by its own corporate citizens against not only residents of Washington, but non-Washington residents. The way you just stated it, even, i.e., by its own corporate citizens, is the one that, again, gives one great pause with regard to State Farm. I understand it may have an—first of all, certainly, if you did the—well, I believe, anyway, if you did the contact analysis separately for each defendant, I understand that State Farm isn't in Texas, but it's also not in Washington. So Washington's—the connection of Washington to State Farm is a lot weaker, even if there is some relationship from them having hired an agent. And I would think also that the interest analysis is different because Washington, as you say, has an interest in its corporate citizens behaving, but State Farm isn't its corporate citizen. So that's where I—I understand that there is a Washington Supreme Court case, I guess, two of them, Spider, whatever, and— Spider staging, Your Honor, yes. Which is pretty close in as to the Seattle Service Bureau, but not State Farm. And I think maybe this question highlights the problem of the court having resolved these issues on a motion to dismiss. Here's what we know. How should we do choice of law analysis? Do we have a trial about it? No, but often choice of law is determined later, as in Spider staging, after a summary judgment and a trial. Certainly a summary judgment after discovery. What contested issues were there here? I think the issues are quite straightforward. You allege that a company in Washington sent letters which give rise to liability to your client in Texas. What other facts would there be relevant to the choice of law analysis? I think the facts that we would want to develop go directly to Your Honor's questions, which is what is the relationship between State Farm and SSB? Is there a contract that actually obligated them both to follow Washington state law? Were there indemnity provisions pointing one way or another? Did State Farm ever come and meet with SSB in Washington to help develop and design the collection letters? We don't know any of that because it was done on a motion to dismiss, and I might say— Assume all that to be true. Under the district court's analysis, it said—and I think it did assume most of that to be true—the great weight of the contacts are in Texas, and the quality of the contacts are in Texas, whether one applies 145 or 148. And I think, frankly, between the sides, it's an irrelevant dispute. And so if the great weight of the contacts are in Texas, does it really matter what other facts you might discover here? Let's assume that they are an agent and they plotted together somewhere to send these letters, the worst possible set of facts. The damage occurs in Texas. The letters are occurred in Texas. Your client claims that all the bad things that happened to her happened in Texas. Why isn't that enough to choose Texas law? Because for over 50 years, Washington has rejected Lex Loci as the analysis— I'm not talking about Lex Loci. I'm talking about the restatement analysis, which looks at the number and quality of the contacts. And so to me, that's what the district court did. It didn't say—and I'm trying—I'm having a hard time figuring out why the nature and quality of the contacts are to be reviewed in light of Section 6's general principles, which have to do with the interests of the various states, the policies underlying the laws that each state might want to apply, the goals and purposes of those statutes. That's why you reach a ruling in spider staging, right, where the Washington court applied Washington law rather than Kansas law, even though the plaintiff was from Kansas and had been injured there. I agree with Your Honor that, frankly, spider staging— Weren't the quality of the contacts much greater in spider staging? I believe they were virtually identical. They received—I mean, I think they're almost identical. The plaintiff in Kansas receives the scaffolding there. The plaintiff sets up the scaffolding there. The plaintiff is killed there. The injury and the location, the residence of the plaintiff, and the receipt of the problem, right, the product, all happened in Kansas. And yet what our state Supreme Court said quite clearly in setting out a two-stage analysis is the facts look like they're evenly balanced, right? So you have the misconduct occurring in Washington, the design, the manufacture, the sale of a defective product, but you have the injury and the residence of the plaintiff in Kansas. What could be more on point with this case? And in spider staging— And I guess your argument depends on sort of backing out the underlying facts, i.e., where the accident occurred and all that is not pertinent to this trial. Those facts are completely irrelevant to whether or not Ms. Thornell has a consumer protection claim under either Texas or Washington law. Why don't 145 and 148 both talk about where the damage from the alleged tort occurs? But the damage here, the damage relative to this case is the amounts that she paid, not the car accident or the fact that the person driving— Whatever she paid, she paid in Texas. That's correct. Because she didn't in fact pay—had she in fact paid, do we also consider what she would have paid? Had she—if she had succumbed to the asserted fraud, she would have paid money to Seattle Service Bureau. Then the payment would have been in Washington. But she didn't. She didn't. She incurred expenses in Texas. That's correct. To try to protect herself. To try to protect herself. So in the other—the reason I'm having some trouble with the spider case is in that case, we have a voluntary transaction between a buyer in Kansas and a Washington manufacturer. And so the Kansas person voluntarily, you know, does business with somebody in Washington. Is that different? Because that's really—you know, I know it's a products liability case, but it arises out of a contract. Isn't that somewhat different from the argument here, the violation of a statutory right? To the extent that it is, I actually think it cuts in our favor. Because Ms. Thornell initiated no contact with SSB or State Farm. Instead, she was just in Texas and suddenly gets a letter claiming that she owes an amount that had never been liquidated. I think it might cut the other way. Because someone in Kansas dealing with Washington, a Washington manufacturer, might well feel like it was going to gain the benefit of having dealt with somebody in another state because that state's law might be somewhat more favorable here. Your client has no expectation, as the transaction begins, that somehow she's dealing with a Washington-based operation. I would add, though, Washington does look at the expectations of the parties. And the notion that either SSB or its principal, State Farm, did not expect to have Washington law applied to its conduct when they were engaged in debt collection activity emanating from Washington is not reasonable. Although you just told me that's not relevant. You said Washington doesn't look to the expectations. I don't believe I said that. I apologize, Your Honor. Let's look at the agency issue for just one minute. And then I do want to reserve a little bit of time. There are no contacts between State Farm and Texas that are relevant to this matter. The problem is that it seems, I mean, A, its contacts in Washington are weaker. And Washington's interest in regulating it, even though it's a bigger entity, are arguably weaker. But more than that, your argument depends, the spider argument, spider staging argument, depends on the notion that by not regulating this transaction, Texas has no interest in it. Of course, the countervailing notion is it has an interest in it. It has made a decision not to regulate these kinds of transactions in order to foster the market in Texas. And that seems to be of some interest to Texas with regard to State Farm, i.e., to have State Farm selling insurance in Texas. But none with regard to the Seattle Service Bureau. Two points on that. Number one, there has been no articulated interest of Texas in applying its own law and depriving Ms. Thornell a claim. If you look closely at the district court's order, frankly, she never did the interest analysis with regard to Texas. So there is no interest in the record, no finding as to why Texas wanted to deprive Ms. Thornell of a claim for better business purposes or whatever. And when you look at the Washington State jurisprudence on choice of law, you'll see and again and again and again that our state courts find that foreign states have no legitimate interest in depriving their own residents of a claim under Washington law. That is governing, controlling law in our state. And that's why the result came out the way it did in spider staging. Okay. Thank you very much. We'll give you one minute in rebuttal. Yes. Good morning and may it please the court. I represent State Farm, but I am actually appearing here on behalf of both of the appellees. And the reason for that is very simple. The district court dismissed the case as to both appellees, concluding that section, whether you look at 145 or whether you look at 148, Washington law would apply in either case. And there's been no appeal here on the ground that the two defendants should have been treated differently. And I think that's an important point. Even if the other side hasn't claimed that, why can't we look at that issue? Well, let's look at that issue. The other side says both defendants should be subjected to Washington law. Could we conclude that one should and one shouldn't? You could. Absolutely. You could. But that's not the gist of their argument. And let me explain why. The allegations in this case. The question really isn't whether it's the gist of their argument. The question is whether it's appropriate application of law. I quite agree. And I think you could conclude that. And certainly with respect to a corporation located in Washington, the state's interests may be greater in applying its own law to it than to a corporation located in Illinois. I think that's quite right. Although, recall that under both 148, 5 and 148, we don't look at analyzing and comparing the two state interests until the, unless the contacts are evenly balanced. And that's why. First of all, these restatements are restatements. And they're not the law of Washington as such. And we do have law in Washington. And the law in Washington is very clear that we only look at an actual analysis of what is the interest of this state and what is the interest of that state if the contacts are evenly balanced. And you don't look at the contacts in the context of the interests? You, of course you do. Of course you do. But in that instance, I want to direct the court to Future Select, a Washington Supreme Court case that adopted section 148 for common law fraud claims. And it explained that in that case, you had plaintiffs who were Washington residents. And you had a defendant who was from a different state. And the Washington Supreme Court said that in that state, Washington, here, Texas, has a more compelling interest in protecting its investors from fraud and misrepresentation than their New York, here, Washington. What are the contacts in Texas that make a difference here? Opposing counsel says that the contacts to Texas aren't relevant because that doesn't go to the consumer protection claim. So let's talk about exactly what for that claim. We have a Texas plaintiff. We have a Texas injury. We have letters that were intentionally directed into Texas. Those letters were allegedly unfair and deceptive because of the effect that they were designed to have when the plaintiff opened them in Texas. Let me point to the parts of the complaint that say that. Paragraph 41 of the complaint says that the letters were presented in the way they were, quote, in order to intimidate and coerce plaintiff into paying. And paragraph 42 says the letters were written the way they were in order to deceive plaintiff into believing. So that is the nature of what is alleged about these letters to be unfair and deceptive. And it was directed toward the plaintiff where she received the letters in Texas. The intimidation and the deceit would have occurred in Texas. In Texas. So the nature of the very claim that they're alleging, which is an unfair practice claim. This is why I find it hard to get away from the notion that there may be different answers for the two defendants. Insofar as we're talking about the Seattle Surface Bureau, everything they did, they did in Washington. And they're a Washington corporation in general. So isn't that at least a countervailing equal consideration as to the context here? At least equal. Actually, so first of all, I just want to take a step back and say I completely agree that the context with respect to my client State Farm are thin in the extreme with respect to Washington. So I just want to be clear about that. But because I'm speaking here on behalf of SSB as well, I would like to make a couple of points about that. And one is that with respect to SSB, if you look at 148, it says that the residence of the plaintiff is more important. And that's because in a claim involving misrepresentation, what we care about is the effect it was having, right? What we care about is that effect. And that effect necessarily in this case happened in Texas, even with respect to SSB. But Washington is entitled in the Spider case and also the Washington Supreme Court case in this case, opinion in this case. Evidence, a concern of Washington with regulating the behavior of its corporate citizens, a strong concern. And I understand that the Washington Supreme Court opinion in this case didn't decide the choice of law question, but it did. It did evidence in deciding what it did decide. Um, a, um, that, that the policy of this statute was concerned with regulating Washington corporate citizen behavior. And I completely acknowledge that. And that is an interest that Washington has. But what the choice of law analysis looks at is which is the state with the most significant relationship. So what's, what's, what's Texas's interest in regulating this transaction? Or not regulating it. I understand what Texas's interest is with respect to its own residents. What could you, Spider staging is a little different, but we look at that case in the Supreme Court of Washington says, well, look, um, the purpose of, of the wrongful death statute is to protect Kansas residents. And so applying their statute of limitations in this case won't protect Kansas residents. So we'll apply ours. Um, if you think of the, so I'm trying to figure out what the, what the purpose of the absence of regulation of this is in Texas, because that would be the spider analysis. Spider would say, well, what's Texas's interest in having the law the way it is? Well, the Texas has an interest in making sure that companies find Texas to be a good place to do business. So for example, if, if state, state farm sells insurance in Texas, does, does this particular sold this particular policy in Texas? It was all about Texas, right? But, um, with respect to any company, state, uh, Texas has an interest in making sure Texas has been good business. Texas may have an interest in, in making it state business friendly. Absolutely. And in fact, tech, the Texas Supreme court wrote in the Coca-Cola case that laws about consumer protection and fair business practices, quote, necessarily reflect fundamental policy choices that the people of one jurisdiction should not impose on the people of another. The state of Texas has made a policy judgment that it prefers not to extend a consumer protection act to this kind of non-purchasers. Correct. Because it does have a consumer protection act for purchase. And it's for that reason that this particular conduct does not qualify under the consumer protection act claim. Now, I know there was a dialogue in the district court and I feel similarly, it seems very strange that Texas would say, Oh, Oh, fine. You know, right. Write letters to people in, in, uh, in Texas, um, representing that they owe you money when they don't just, and because you don't have, uh, uh, you didn't have any previous relationship with them. It's just fine. There's no Texas law. That seems. Well, I don't know that there's no Texas law. I mean, it's represented that there's no Texas law. But I don't, I don't know that. I mean, the other difficulty here, and I think this is one of the reasons why we don't look at this question of balancing of state interests unless the, um, contexts are evenly balanced is because I'm not Texas. I don't speak for Texas. The district court not only applied Texas law, but then thereafter dismissed the case because it found no claim under Texas law. Does that mean there's no common law claim under Texas law? To be honest, I don't know. Is it simply because no common law claim was asserted? There's been no common, well, there was an unjust enrichment claim asserted that was dismissed for a different basis, but there was no other common law claim asserted here. They've not attempted to sue under Texas law from the beginning of this case. They've said Texas law has nothing to do with this case. From the beginning of the case, the only claim was one under the CPA, the consumer protection act of Washington. Correct. And presumably if, if plaintiffs wanted to sue under Texas law on behalf of Ms. Thornell and claim some remedy in Texas, they could have done so in a Texas court. Or they could have, they've got jurisdiction over your, you don't doubt that they have jurisdiction over your clients in Washington. We have not disputed that. Okay. So they could have amended the complaint to assert. They could. And after that, and they declined to amend the complaint after, uh, I just wanted to make sure what the record was on that. That is what they're. And so there's no other claim in this case. Could there be? I don't know, but they haven't asserted one. If we find the contacts are evenly balanced and, and move on to consider the interests of each state, opposing counsel said that the district court did not consider Texas interests below because it didn't move on to that step. Um, should we remand for the district court to do that? I, I don't think it's necessary. I think the court has enough, uh, argument before it today on that point. And, and again, all you need to do is start with the future select decision itself, the Washington Supreme court decision that compares the relative interest. It acknowledges that both have an interest, right? That clearly a state has an interest in regulating corporations who do things within its boundaries. And clearly a different state might have an interest in regulating what happens to consumers that sit within its boundaries. What level of, um, detail does one do this? And this has something to do with, um, um, Miss, um, Carol's suggestion that there is some record that should be made here. Uh, does it matter? Um, for example, whether Seattle service Bureau, um, has ever, I mean, actually itself done business in, in Texas. Presumably it hasn't, but we don't know that. It doesn't matter. And I will tell you, I heard from this podium earlier, uh, this morning, a list of facts that the plaintiffs would like to develop and should think, believe they should have been allowed to develop before this motion was decided. None of that was briefed in the district court. None of that was briefed. I know, but I'm not really asking directly about the discovery issue. What I'm asking is, um, does it matter that if we knew that Seattle service Bureau, um, had never marketed services in Texas and, and had no intention of doing so, which I suspect are the facts, um, would that matter to the choice of law question? It wouldn't because the choice of law question measures the relation, which state has the most significant relationship. Well, I understand that this deals with the interest matter that I really, which is, I mean, to me, but the interest, I understand that theoretically you're doing this in a two stage process, but it, it seems ridiculously mechanical to me because in order to know what interests matter, you have to know what context matter, you have to know what interests matter. Um, so I, I don't see the division as particularly useful. Um, and so assuming that there is some interaction between the two chain, two stages here, um, does it matter with regard to Washington's asserted interest in controlling the behavior of its own corporate citizens with respect to its own, uh, uh, for matters, for actions done on it, on in Washington, um, as opposed to Texas asserted interest in, in allowing the free market to operate with regard to these kinds of transactions that, that whether particular defendant has any connection to the Texas market, which I suspect it doesn't. But we know one very clear way that this defendant, and I'm referring to SSB, has a connection to the Texas market, and that is in respect to this plaintiff and this cause of action and this claim. But that's not a market thing. In other words, in a, in a... That's true, but... Or was a citizen of Texas, then maybe that interaction would, Texas would have some interest in that, but it isn't. So therefore, it would seem that the connection between State Farm and this agent, I mean, that Texas has no interest in fostering that relationship. Well, actually, if we take a step back to the context we were talking about a moment ago, that my opponent says don't matter in this case at all, State Farm does do business in Texas. I know State Farm does. State Farm sold insurance to the person... I understand. This, the underlying transaction that gave rise to this dispute, the sale of insurance and the automobile accident... All Texas. All occurred in Texas. All Texas. And here's why I think that's important. SSB is alleged to be involved here solely as the agent of State Farm. SSB didn't choose on its own to do business in Texas. It's doing what... It's allegate... The plaintiff's allegation is that SSB is involved here solely as, as the agent of State Farm. And so as we weigh the different factors and figure out which state has the great weight of contacts with this particular claim, the, the links to Washington have to be colored by that agency context, right? So I think, and what I assert to you today is that the fact that SSB is acting as an agent here makes its residence, its location less important with respect to the claim. I have trouble with that because SSB is in effect the critical actor here. There's no allegation, I don't think in this case, because we're dealing with the complaint, that State Farm told them the form of the letters to send. That's correct. They did. They just, they just assigned a claim. They just assigned a subrogated claim. Well, what the allegation is that State Farm and SS, which in the allegation which we take as true for purposes of this motion, is that State Farm and SSB have an agency relationship. No, I understand. You said that. But the problem is there's no real allegation that State Farm... That's absolutely right. ...engaged in, other than having an agency relationship. That's quite right. They're seeking to impose liability on State Farm as a respondee at superior matter, not because they were acting in concert or something. That's exactly right. There's no allegation of that. My point is the critical actor in this case is SSB on the defense side, is it not? I actually don't completely agree with that because the... I know you don't agree with it, but tell me why. Because the allegation here, the reason we're here, is that the plaintiff says she got this letter and I'd like to direct the court to it actually. Before you leave that, what did State Farm do other than make SSB its agent? Nothing, nothing. Okay, and therefore any wrongful acts were acts done by SSB, correct? I quite agree with that. And therefore the locus of the wrongful actor, if you will, is Washington. Yes, and I don't deny that Washington has an interest in that, but the reason I'm referring to it is that the overall question for the court is to look at which state has the most significant relationship, not any interest, not some interest, not a significant interest, but the most significant interest to this claim. I just have a very... I keep having a hard time with looking at Texas's interest in not protecting its plaintiffs. I mean, because that's what you're saying, that Texas hasn't... If you look at the plaintiff's contact, the contact with the plaintiff, you have to do it in the guise of the context that, to me, that Texas is not protecting the plaintiff. So therefore, the fact that it's an interest in not... I mean, when the restatement says it's where the plaintiff lives that's more important, you know, I think the subtle assumption is because they have an interest in protecting the plaintiffs, but there's no interest in not protecting the plaintiff. The argument... The interest asserted by Texas is not an interest in not protecting the plaintiff. It's some interest in... Does it have to relate to the plaintiff? Does Texas's interest have to relate to the plaintiff or to the transaction? I think that Texas's interest relates to the way it sets up its business community and the way it sets up competition in the state and what it... All fine. All of that. And we have absolutely no reason to think that the Seattle Service Bureau has anything to do with any market in Texas. You're right. You're right. Except that they sent this letter to the plaintiff in Texas. They sent this letter to the plaintiff at a place where she did not have a claim. This actually goes a little bit to the due process issue. Due process issue... But that's not in front of us. I'm sorry? The due process issue... It's an alternative ground for affirmation. Well, but if the district court didn't reach it... Correct. So if you... That's why it's an alternative... Yeah, it's an alternative ground that we're not going to reach. But if... I'd like to direct the Court, if I could, to... You're over your time, so please wrap up. Okay. All right. Well, the gist of what I'd like to say, Your Honors, is it is the great weight of context with this claim. And the way choice of law rules work in Washington does not require every court to engage in a broad policy comparison between two states. And although I agree that we look at the context through the lens of interests, the courts are not required to sit here without any representation from either the State of Texas or the State of Washington before you to say which state has a more sensible policy. That's not the rule. The rule is we look at the context, which state has the most significant relationship with the claim. And based on that analysis, whether you look at 145 or 148, the answer for both defendants is Texas. Okay. Thank you. Thank you very much. We will give you a... I'm not sure how much time you have left, but we'll give you a minute. Go ahead. Thank you. Very briefly, Your Honor, this Court has in front of it a classic balancing of factors under restatement, and we'll stick with 145. Do you look at the place of injury or do you look where the conduct occurred? I think it's important to remember, and this was recently reiterated in... Where did the conduct occur in this case? The conduct here occurred in Washington. It's sort of a strange thing because the conduct is sending a letter. So I kind of think of, you know, if I'm standing on the border of Texas and Oklahoma and I punch somebody in Oklahoma, my punch began in Texas, but it ended in Oklahoma. Isn't the conduct here not simply limited to Washington? I believe the conduct is designing, drafting, and sending letters that don't comply with Washington law. Before you leave that, because I think 148 applies, so I don't want you to spend a lot of time on 145, but if they'd mailed the letter from California, would it make a difference? If SSB in Washington had mailed the letter from California? Yeah, the principal of SSB was on a trip to San Francisco, took the mail with him, and mailed it from there. Would that make any difference as to where their conduct occurred? No, I think what matters is that SSB is here in Washington, it designed the letters here, and it reached out of Washington to create a relationship. Right, right, and my point is that it doesn't matter from where the letters were mailed, does it? Only in that this is SSB's headquarters, and so it does matter. It's a contact with Washington. What? Go ahead, I can't remember what I was going to ask you. Just two issues quickly, Your Honor, that I'd like to make sure don't cloud the ruling here. Number one, it is not the case under Washington choice of law jurisprudence that the contacts must be evenly balanced before you do an interest analysis. Isn't that precisely what the restatement says? No, no, it's not what the restatement says, and it is clearly not what the Supreme Court said in Spider Staging, Southwell, or more recently in Future Select, or... Well, let me read your language from Myers and tell me if that's no longer the law in Washington. If the contacts, first we look at each contact and we evaluate them by employing the factors listed in the restatement, that's a rephrasing. This is an exact quote from Myers. If the contacts are evenly balanced, the court then looks to which forum has a greater interest in the determination of the particular issue. Are you telling me that's no longer the law in the state of Washington? I'm telling you that it never was a law in the state of Washington. I'm reading you from the opinion of the Washington Supreme Court in Myers. I understand, Your Honor. Is that wrong? It was wrong. Myers was in 1990. It actually was mostly a forum nonconvenient case that did a little side issue on choice of law. Future Select, which was decided in 2014, and Woodward versus Taylor, which was decided in 2016, cite and use the two-step test adopted in Southwell. There is no requirement in Southwell or spider staging that the contacts be evenly balanced. And the reason for that, here's what the state Supreme Court said in 1969 when it first looked at adopting the restatement. Certainly, an indication of contacts is meaningless without consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue. The interest analysis is equally of importance as the contact analysis under Washington state choice of law. Might not be true in California, might not be in Texas, but we're here in Washington and those are the rules that apply. And so it's unfortunate that Myers picked up that language and then some intermediate appellate courts picked it up. But if you go back to spider staging, the only presence of the phrase evenly balanced is actually in footnote, I think it's five. But here's my difficulty. This is a diversity case. Yes. We have a direct statement from the Supreme Court of Washington and you're saying, I think with some justification, if you read its later cases, we're not so sure it still believes that, although it didn't, it doesn't ever disavow it. And so what are we supposed to do in a case like that? Your Honor, I believe you should follow what the analysis was in spider staging and originally, because that was the first real analysis or setting forth of a two-step analysis. The language. It's a 1976 case. It is. And we have a 1990 Washington Supreme Court decision. So you're telling us that the language in the 1976 case overrides the language in the 1990 decision? No. What I'm saying is the language in the 1976 case is identical to the language in the 2014 case of future select and in the 2016 case of Woodward versus Taylor. So I agree that Myers says that. It wasn't relevant to its analysis at all. In fact, Myers, I think, had found that there was a false conflict. Please look at the more recent analyses because I would hate to have the evenly balanced. Future select and what else? It's Woodward versus Taylor, Your Honor. 184, Wynn second, 9-11. Okay. Your time is up. All right. So thank you very much. Thank you both for your argument. The case of Thornell versus Seattle Service Bureau and State Farm is submitted. We'll go to the second and last case of the day, Apex Abrasives.
judges: Thacker, Berzon, Hurwitz